# Commonwealth *v.* Leventhal, Appellant.

*Criminal law—Disposing of goods to defraud creditors—Intent —Case for jury.*

In a prosecution for disposing of property with intent to defraud creditors, the case is for the jury and a verdict of guilty will be sustained, where the evidence showed that shortly before going into bankruptcy the defendant had made large purchases, which were not paid for, and that, immediately prior to his declaration in bankruptcy, he had disposed of his property.

Argued November 20, 1919. Appeal, No. 33, April Term, 1920, from judgment of Q. S. Westmoreland County, February Term, 1919, No. 3, on verdict of guilty in the case of Commonwealth v. Nathan Leventhal. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictment for disposing of property with intent to defraud creditors under the provisions of the Act of April 22, 1903, P. L. 242. Before SNYDER, J.

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

On motion in arrest of judgment and for a new trial the court below filed the following opinion:

The defendant, Nathan Leventhal, was tried and convicted under the Act of Assembly approved April 22, 1903, P. L. 242. This act provides inter alia, as follows: "Any person......who shall secrete, assign, convey or otherwise dispose of any of his property, or the property of any other person, with intent to defraud any creditor ......shall be guilty of misdemeanor, etc."

The defendant has made a motion in arrest of judgment and for a new trial. The reason urged at the argument upon this motion was that the court erred in refusing to instruct the jury to find a verdict of not guilty. Counsel for defendant contend that there was no evidence upon which to base a verdict of guilty.

It was admitted that the defendant had filed a petition in voluntary bankruptcy on the 22d day of October, 1918. It was clear from the evidence that the defendant just prior to the bankruptcy proceeding had disposed of a very large stock of goods. The only question was whether those goods were disposed of with intent to defraud his creditors.

The intent to defraud is rarely shouted from the house tops. Seldom is it susceptible of direct proof. Usually every artifice known to the defendant is used to conceal such intent. The fraudulent design must therefore, be determined from the surrounding circumstances.

In the case before us the undisputed evidence shows that the defendant within a very brief period prior to the bankruptcy proceedings had purchased a stock of goods far in excess of his purchases at any other time, for example, within fifteen days of the bankruptcy proceedings he purchased five hundred and sixty (560) sacks of potatoes from the C. C. Spencer Company. Prior to that time he had purchased but three hundred and seventy-five (375) sacks of potatoes from this same

company within a period of ten months. Other large purchases were made in the same way about this time. Before any urgent demand was made for payment and even before some of the bills became due he went into voluntary bankruptcy. The schedules show that he had practically no debts except for the goods which he had purchased shortly prior thereto.

In addition to this testimony the evidence shows that one car load of potatoes was shipped to Verona and that he endeavored to employ a friend, Sam Harris, to go to Verona and sell them out at "any price." In addition to this he sold twenty-three (23) crates of grapes to Sam Harris at the rate of fifty (50) cents per crate. It is true Harris testifies that the grapes were "not extra, a little bad," but they were the same grapes that the defendant had purchased but a few days before and agreed to pay therefor and that the regular market price was from $2.25 to $2.40 per crate.

The testimony also showed that on October 19, 1918, there was twelve hundred twelve and fifty-one hundredths ($1,212.51) dollars to his credit in bank, that the day prior to his going into bankruptcy all this money had been checked out, except $9.79, that the day prior to his going into bankruptcy he called at the bank and insisted that his bankbook must be balanced at once.

The defendant did not testify and has at no time made any effort to explain what became of all this property, the wholesale price of which was almost six thousand ($6,000) dollars. Under the circumstances it was clearly the duty of the court to submit the case to the jury. The witnesses were substantial business men and their testimony was clear and convincing. The surrounding circumstances point clearly and unmistakably to a fraudulent intent. The defendant certainly had a fair trial. The charge of the court was perhaps more favorable to the defendant than the evidence warranted.

And now, May 10, 1919, the motion in arrest of judgment and for a new trial in the above stated case is re-

fused and the defendant is directed to appear for sentence.

*Errors assigned* were refusal to give binding instructions in favor of the defendant, refusal of motion in arrest of judgment and to grant a new trial.

*Mortimer B. Lesher,* for appellant.

*Leonard S. Levin,* and with him *Thomas Taylor,* Assistant District Attorney, and *Nevin A. Cort,* District Attorney, for appellee.

PER CURIAM, February 28, 1920:

Every question raised by the appellant on this appeal is properly disposed of in an opinion filed refusing to arrest the judgment and grant a new trial.  The case was ably tried in the court below, and the disputed facts were fairly and adequately submitted to the only tribunal authorized to dispose of them.

The judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with that part of the sentence which had not been performed at the time this appeal was made a supersedeas.